**LeClairRyan**
*A Professional Corporation*
One Riverfront Plaza
1037 Raymond Boulevard
Newark, New Jersey 07102
(973) 491-3600
Attorneys for Plaintiff, Ramada Worldwide Inc.

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| RAMADA WORLDWIDE INC., a Delaware Corporation,<br><br>        Plaintiff,<br><br>v.<br><br>JAI SHRI RAM HOSPITALITY GROUP OF SACRAMENTO, LLC, a California Limited Liability Company; VINDOD K. SHARMA, an individual; and RAJMINDER SHARMA, an individual,<br><br>        Defendants. | Civil Action No. 15-<br><br>**COMPLAINT** |

Plaintiff Ramada Worldwide Inc., by its attorneys, LeClairRyan, complaining of defendants Jai Shri Ram Hospitality Group of Sacramento, LLC, Vindod K. Sharma, and Rajminder Sharma, says:

**PARTIES, JURISDICTION AND VENUE**

1. Plaintiff Ramada Worldwide Inc., ("RWI") is a corporation organized and existing under the laws of the State of Delaware, with its principal place of business in Parsippany, New Jersey.

2. Defendant Jai Shri Ram Hospitality Group of Sacramento, LLC ("JSR"), on information and belief, is a limited liability company organized and existing under the laws of

the State of California, with its principal place of business at 6216 Brockenhurst Drive, Elk Grove, California 95758.

3.   Defendant Vindod K. Sharma ("V. Sharma"), on information and belief, is a member of JSR and a citizen of the State of California, having an address at 344 Listowe Avenue, Folsom, California 95630.

4.   Defendant Rajminder Sharma (" R. Sharma"), on information and belief, is a member of JSR and a citizen of the State of California, having an address at 344 Listowe Avenue, Folsom, California 95630.

5.   Upon information and belief, V. Sharma and R. Sharma are the only constituent members of JSR.

6.   The amount in controversy in this matter, exclusive of interest and costs, exceeds the sum of $75,000.

7.   This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331, 1332, 1338, 15 U.S.C. § 1121 and, with respect to certain claims, 28 U.S.C. § 1367.

8.   This Court has personal jurisdiction over the defendants by virtue of, among other things, section 17.6.3 of the October 20, 2010 franchise agreement by and between JSR and RWI (the "Franchise Agreement"), described in more detail below, pursuant to which JSR has consented "to the non-exclusive personal jurisdiction of and venue in the New Jersey state courts situated in Morris County, New Jersey and the United States District Court for the District of New Jersey . . . ."

9.   This Court has personal jurisdiction over V. Sharma and R. Sharma by virtue of, among other things, the terms of a guaranty (the "Guaranty"), described in more detail below,

pursuant to which V. Sharma and R. Sharma acknowledged that they were personally bound by section 17 of the Franchise Agreement.

10. Venue is proper in this District pursuant to section 17.6.3 of the Franchise Agreement, inasmuch as that provision contains an express waiver by JSR of any objection to venue in this District.

## ALLEGATIONS COMMON TO ALL COUNTS

### The Ramada® Marks

11. RWI is one of the largest guest lodging facility franchise systems in the United States, and is widely known as a provider of guest lodging facility services.

12. RWI owns and has the exclusive right to license the use of the service mark RAMADA and various related trade names, trademarks and service marks (certain of which are on the principal register of the United States Patent and Trademark Office), logos, and derivations thereof (the "Ramada® Marks"), as well as the distinctive Ramada® System, which provides guest lodging services to the public under the Ramada® name and certain services to its licensees, including a centralized reservation system, advertising, publicity, and training services.

13. RWI or its predecessors first used the RAMADA mark in 1970 and the Ramada® Marks are in full force and effect. Certain of the registered Ramada® Marks are incontestable pursuant to 15 U.S.C. § 1065.

14. RWI has given notice to the public of the registration of the Ramada® Marks as provided in 15 U.S.C. § 1111.

15. RWI uses or has used the words "Ramada," among others, as abbreviations of its brand name.

16. Through its franchise system, RWI markets, promotes, and provides services to its guest lodging licensees throughout the United States. In order to identify the origin of their guest lodging services, RWI allows its licensees to utilize the Ramada® Marks and to promote the Ramada® brand name.

17. RWI has invested substantial effort over a long period of time, including the expenditure of millions of dollars, to develop goodwill in its trade names and service marks to cause consumers throughout the United States to recognize the Ramada® Marks as distinctly designating RWI guest lodging services as originating with RWI.

18. The value of the goodwill developed in the Ramada® Marks does not admit of precise monetary calculation, but because RWI is one of the largest guest lodging facility franchise systems in the United States and is widely known as a provider of guest lodging facility services, the value of RWI's goodwill exceeds hundreds of millions of dollars.

19. The Ramada® Marks are indisputably among the most famous in the United States.

## The Agreements Between The Parties

20. On or about October 20, 2010, RWI entered into the Franchise Agreement with JSR for the operation of a 123-room[1] Ramada® guest lodging facility located at 2600 Auburn Road, Sacramento, California 95821, designated as Site No. 07274-82626-03 (the "Facility"). A true copy of the Franchise Agreement is attached hereto as Exhibit A.

21. Pursuant to section 5 of the Franchise Agreement, JSR was obligated to operate a Ramada® guest lodging facility for a fifteen-year term, during which time JSR was permitted to

---

[1] On December 31, 2010, the parties executed an Amendment to the Franchise Agreement, a copy of which is attached hereto as Exhibit B, which increased the amount of available guest rooms from 123 to 140.

use the Ramada® Marks in association with the operation and use of the Facility as part of RWI's franchise system.

22. Pursuant to section 7, section 18.6, and Schedule C of the Franchise Agreement, JSR was required to make certain periodic payments to RWI for royalties, service assessments, taxes, interest, reservation system user fees, and other fees (collectively, "Recurring Fees").

23. Pursuant to section 7.3 of the Franchise Agreement, JSR agreed that interest is payable "on any past due amount payable to [RWI] under this [Franchise] Agreement at the rate of 1.5% per month or the maximum rate permitted by applicable law, whichever is less, accruing from the due date until the amount is paid."

24. Pursuant to section 3.6 of the Franchise Agreement, JSR was required to prepare and submit monthly reports to RWI disclosing, among other things, the amount of gross room revenue earned by JSR at the Facility in the preceding month for purposes of establishing the amount of royalties and other Recurring Fees due to RWI.

25. Pursuant to section 3.6 of the Franchise Agreement, JSR agreed to maintain at the Facility accurate financial information, including books, records, and accounts, relating to the gross room revenue of the Facility and, pursuant to sections 3.6 and 4.8 of the Franchise Agreement, JSR agreed to allow RWI to examine, audit, and make copies of the entries in these books, records, and accounts.

26. Pursuant to section 11.2 of the Franchise Agreement, RWI could terminate the Franchise Agreement, with notice to JSR, for various reasons, including JSR's (a) failure to pay any amount due RWI under the Franchise Agreement, (b) failure to remedy any other default of its obligations or warranties under the Franchise Agreement within 30 days after receipt of written notice from RWI specifying one or more defaults under the Franchise Agreement, and/or

(c) receipt of two or more notices of default under the Franchise Agreement in any one year period, whether or not the defaults were cured.

27. Pursuant to section 12.1 of the Franchise Agreement, JSR agreed that, in the event of a termination of the Franchise Agreement pursuant to section 11.2, it would pay liquidated damages to RWI in accordance with a formula specified in the Franchise Agreement.

28. Section 18.1 of the Franchise Agreement specifically set liquidated damages for the Facility to be the lesser of "(i) $1,000.00 for each guest room of the Facility [JSR] was authorized to operate at the time of Termination or (ii) the total amount of Recurring Fees generated at the Facility during the one year period immediately before the date of Termination."

29. Section 13 of the Franchise Agreement specified JSR's obligations in the event of a termination of the Franchise Agreement, including its obligation to immediately cease using all of the Ramada® Marks.

30. Pursuant to section 17.4 of the Franchise Agreement, JSR agreed that the non-prevailing party would "pay all costs and expenses, including reasonable attorneys' fees, incurred by the prevailing party to enforce this [Franchise] Agreement or collect amounts owed under this [Franchise] Agreement."

31. Effective as of the date of the Franchise Agreement, V. Sharma and R. Sharma provided RWI with a Guaranty of JSR's obligations under the Franchise Agreement. A true copy of the Guaranty is attached hereto as Exhibit C.

32. Pursuant to the terms of the Guaranty, V. Sharma and R. Sharma agreed, among other things, that upon a default under the Franchise Agreement, they would "immediately make each payment and perform or cause [JSR] to perform, each unpaid or unperformed obligation of [JSR] under the [Franchise] Agreement."

6

33. Pursuant to the terms of the Guaranty, V. Sharma and R. Sharma agreed to pay the costs, including reasonable attorneys' fees, incurred by RWI in enforcing its rights or remedies under the Guaranty or the Franchise Agreement.

### The Defendants' Defaults and Termination

34. Beginning in 2011, JSR repeatedly failed to meet its financial obligations to RWI, in breach of the Franchise Agreement.

35. By letter dated May 8, 2013, a true copy of which is attached hereto as Exhibit D, RWI advised JSR that (a) it was in breach of the Franchise Agreement because it owed RWI approximately $80,905.85 in outstanding Recurring Fees, (b) it had 10 days within which to cure this monetary default, and (c) if the default was not cured, then the Franchise Agreement might be subject to termination.

36. By letter dated August 27, 2013, a true copy of which is attached hereto as Exhibit E, RWI advised JSR that (a) it was in breach of the Franchise Agreement because it owed RWI approximately $97,704.90 in outstanding Recurring Fees, (b) it had 10 days within which to cure this monetary default, and (c) if the default was not cured, then the Franchise Agreement might be subject to termination.

37. By letter dated September 30, 2013, a true copy of which is attached as Exhibit F, RWI terminated the Franchise Agreement, effective September 30, 2013, and advised JSR that (a) it was to immediately de-identify the Facility and remove all items that display or refer to the Ramada® brand at the Facility, (b) it was required to pay to RWI as liquidated damages for premature termination the sum of $22,081.18 as required under the Franchise Agreement, and (c) demand was made for all outstanding Recurring Fees through the date of termination.

38. The termination of the Franchise Agreement precluded JSR from any further use of the Ramada® Marks in or around the Facility.

39. The termination of the Franchise Agreement precluded JSR from any further use of the Ramada® Marks to induce the traveling public to use the Facility in any way.

40. Following the termination of the Franchise Agreement, JSR continued to use the Ramada® Marks to induce the traveling public to rent guest rooms at the Facility for a period of at least 14 months.

41. Following the termination of the Franchise Agreement, JSR used the Ramada® Marks without authorization to rent rooms through, among other things, failure to remove Ramada® signage and continuing to identify the Facility as a Ramada® guest lodging for a period of at least 14 months.

42. JSR continued to misuse the Ramada® Marks despite receiving notification from RWI to cease and desist from the misuse of the Ramada® Marks.

43. By letter dated October 23, 2014, a true copy of which is attached as <u>Exhibit G</u>, RWI demanded that JSR immediately cease and desist the misuse of the Ramada® Marks.

44. On or about December 9, 2014, RWI removed the Ramada® Marks from the Facility pursuant to Section 13.2 of the Franchise Agreement.

## FIRST COUNT

45. RWI repeats and makes a part hereof each and every allegation set forth in paragraphs 1 through 44 of the Complaint.

46. Section 32 of the Lanham Act, 15 U.S.C. § 1114(1)(a), provides in pertinent part that "[a]ny person who shall, without the consent of the registrant — use in commerce any reproduction, counterfeit, copy, or colorable imitation of a registered mark in connection with the

8

sale, offering for sale, distribution, or advertising of any goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive . . . shall be liable in a civil action by the registrant . . . ."

47. Following the termination of the Franchise Agreement, JSR marketed, promoted, and rented rooms at the Facility through the unauthorized use of the Ramada® Marks, and such use caused confusion or mistake among prospective or actual customers, in violation of Section 32 of the Lanham Act.

48. Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), provides in pertinent part that "[a]ny person who, on or in connection with any goods or services . . . uses in commerce any word, term, name, symbol . . . or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which is likely to cause confusion, or to cause mistake, or to deceive as to affiliation . . . or as to the origin, sponsorship, or approval of . . . goods and/or services . . . shall be liable in a civil action . . . ."

49. The acts of JSR in marketing, promoting, and renting rooms at the Facility, through and with the Ramada® Marks, constitute:

(a) a false designation of origin;

(b) a false and misleading description of fact; and

(c) a false and misleading representation of fact;

that caused confusion, or caused mistake, or deception, as to the affiliation of JSR's Facility with RWI, and caused confusion, or caused mistake, or deception, to the effect that RWI sponsored or approved of the guest lodging services that JSR provided at the Facility, all in violation of Section 43(a) of the Lanham Act.

50. JSR's use of the Ramada® Marks in connection with goods and services at the Facility, after the Ramada® Marks became famous, caused dilution and disparagement of the distinctive quality of the Ramada® Marks, and lessened the capacity of the Ramada® Marks to identify and distinguish the goods and services of RWI, all in violation of Section 43(c) of the Lanham Act.

51. JSR's acts of infringement in violation of Sections 32, 43(a), and 43(c) of the Lanham Act are malicious, fraudulent, willful, and deliberate.

**WHEREFORE**, pursuant to 15 U.S.C. §§ 1114, and 1125(a) & (c), RWI demands judgment against JSR granting compensatory damages, treble damages, attorneys' fees, prejudgment interest, costs of suit, and such other and further relief as this Court shall deem just and proper.

## SECOND COUNT

52. RWI repeats and makes a part hereof each and every allegation contained in paragraphs 1 through 51 of the Complaint.

53. Pursuant to sections 3.6 and 4.8 of the Franchise Agreement, JSR agreed to allow RWI to examine, audit, and make copies of JSR's financial information, including books, records, and accounts, relating to the gross room revenue earned at the Facility.

54. JSR has engaged in acts and practices, as described, which amount to infringement of the Ramada® Marks in an unlawful, unfair, and fraudulent manner which is likely to confuse the public.

55. As a result, JSR owes restitution and the disgorgement of profits, in an amount unknown to RWI, and which amount cannot be ascertained without an accounting of the receipts and disbursements, profit and loss statements, and other financial materials, statements and books from JSR.

**WHEREFORE**, RWI demands judgment ordering that JSR account to RWI for any and all revenue derived as a result of marketing, promoting, or selling guest lodging services at the Facility through and with the Ramada® Marks.

### THIRD COUNT

56. RWI repeats and makes a part hereof each and every allegation contained in paragraphs 1 through 55 of the Complaint.

57. On September 30, 2013, RWI terminated the Franchise Agreement, effective September 30, 2013, due to JSR's failure to meet its financial obligations.

58. Section 12.1 of the Franchise Agreement provides that, in the event of termination of the Franchise Agreement due to action of the Franchisee, JSR shall pay liquidated damages to RWI within 30 days of termination.

59. As a result of the termination of the Franchise Agreement, JSR is obligated to pay RWI liquidated damages in the amount of $22,081.18, as calculated pursuant to sections 12.1 and 18.1 of the Franchise Agreement.

60. Notwithstanding RWI's demand for payment, JSR has failed to pay RWI the liquidated damages as required in sections 12.1 and 18.1 of the Franchise Agreement.

61. RWI has been damaged by JSR's failure to pay liquidated damages.

**WHEREFORE**, RWI demands judgment against JSR for liquidated damages in the amount of $22,081.18, together with interest, attorneys' fees, and costs of suit.

### FOURTH COUNT

62. RWI repeats and makes a part hereof each and every allegation contained in paragraphs 1 through 61 of the Complaint.

63. By virtue of the premature termination of the Franchise Agreement, RWI sustained a loss of future revenue over the remainder of the fifteen-year term of the Franchise Agreement.

64. If the Court determines that JSR is not liable to pay RWI liquidated damages as required by sections 12.1 and 18.1 of the Franchise Agreement then, in the alternative, JSR is liable to RWI for actual damages for the premature termination of the Franchise Agreement.

65. RWI has been damaged by JSR's breach of its obligation to operate a Ramada® guest lodging facility for the remaining term of the Franchise Agreement.

**WHEREFORE**, RWI demands judgment against JSR for actual damages in an amount to be determined at trial, together with interest, attorneys' fees, and costs of suit.

## FIFTH COUNT

66. RWI repeats and makes a part hereof each and every allegation contained in paragraphs 1 through 65 of the Complaint.

67. Pursuant to section 7, section 18.6, and Schedule C of the Franchise Agreement, JSR was obligated to remit Recurring Fees to RWI.

68. Despite its obligation to do so, JSR failed to remit certain of the Recurring Fees due and owing under the Franchise Agreement, in the current amount of $135,442.47.

69. JSR's failure to remit the agreed Recurring Fees constitutes a breach of the Franchise Agreement and has damaged RWI.

**WHEREFORE**, RWI demands judgment against JSR for the Recurring Fees due and owing under the Franchise Agreement, in the current amount of $135,442.47, together with interest, attorneys' fees, and costs of suit.

## SIXTH COUNT

70. RWI repeats and makes a part hereof each and every allegation contained in paragraphs 1 through 69 of the Complaint.

71. At the time of the termination of the Franchise Agreement, JSR was obligated to pay RWI Recurring Fees.

72. Despite its obligation to do so, JSR failed to pay certain of the Recurring Fees due and owing under the Franchise Agreement, in the current amount of $135,442.47.

73. In addition, JSR benefited from its wrongful use of the Ramada® Marks after termination of the Franchise Agreement and paid no royalty or other Recurring Fees to RWI in return for that benefit.

74. JSR's failure to compensate RWI constitutes unjust enrichment and has damaged RWI.

**WHEREFORE**, RWI demands judgment against JSR for the Recurring Fees due and owing under the Franchise Agreement, in the current amount of $135,442.47, and all royalties and other Recurring Fees that should be paid to compensate RWI for the period during which JSR misused the Ramada® Marks and was thereby unjustly enriched, together with interest, attorneys' fees, and costs of suit.

## SEVENTH COUNT

75. RWI repeats and makes a part hereof each and every allegation contained in paragraphs 1 through 74 of the Complaint.

76. Pursuant to the terms of the Guaranty, V. Sharma and R. Sharma agreed, among other things, that upon a default under the Franchise Agreement, they would immediately make each payment and perform each obligation required of JSR under the Franchise Agreement.

77. Despite their obligation to do so, V. Sharma and R. Sharma have failed to make any payments or perform or cause JSR to perform each obligation required under the Franchise Agreement.

78. Pursuant to the Guaranty, V. Sharma and R. Sharma are liable to RWI for JSR's liquidated damages in the amount of $22,081.18, or actual damages in an amount to be determined at trial, and JSR's Recurring Fees due and owing under the Franchise Agreement, in the current amount of $135,442.47, and for those additional Recurring Fees attributable to the period during which JSR misused the Ramada® Marks.

**WHEREFORE**, RWI demands judgment against V. Sharma and R. Sharma for damages in the amount of:

(a) All liquidated damages, or actual damages, and Recurring Fees due and owing under the Franchise Agreement, together with interest, attorneys' fees, and costs of suit;

(b) All profits, royalties, and other Recurring Fees that should be paid to compensate RWI for the period during which JSR misused the Ramada® Marks and was thereby unjustly enriched, together with interest, attorneys' fees and costs of suit; and

LeClairRyan
Attorneys for Plaintiff,
Ramada Worldwide Inc.

By: _____
**BRYAN P. COUCH**

Dated: 2/6/15

## CERTIFICATION PURSUANT TO L. CIV. R. 11.2

I certify that, to the best of my knowledge, this matter is not the subject of any other action pending in any court or of any pending arbitration or administrative proceeding.

**LeClairRyan**
Attorneys for Plaintiff,
Ramada Worldwide Inc.

By: _____
BRYAN P. COUCH

Dated: 2/6/15